PAUL PETERSON, APPELLEE, v. HARTFORD FIRE INSURANCE
COMPANY, APPELLANT.

FILED MARCH 4, 1916. No. 18743.

Compromise and Settlement: FRAUD: EVIDENCE. Evidence examined, its
substance set out in the opinion, and *held* to support the verdict.

APPEAL from the district court for Washington county:
ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Gurley, Woodrough & Fitch,* for appellant.

*Herman Aye, A. W. Jefferis* and *F. S. Howell, contra.*

MORRISSEY, C. J.

This is an action to recover on a settlement of a liability
created by a policy of fire insurance. From a verdict and
judgment in favor of plaintiff, defendant appeals. This
is the second time the case has been in this court. The
former opinion is found in 93 Neb. 448; the opinion being
controlled by its companion case, *Springfield Fire & Ma-
rine Ins. Co. v. Peterson,* 93 Neb. 446. The facts are suffi-
ciently stated in the two cases mentioned and will not be
repeated here. On the retrial of the case, defendant filed
an amended answer alleging that the agreement of compro-
mise and settlement was fraudulently procured, and the
court instructed the jury to the effect that the question
to be determined was: Did the defendant enter into the
adjustment and compromise settlement by reason of any
fraudulent representation or deception practiced by plain-
tiff? No complaint is made of this instruction, and we
will assume that this issue was practically the only one on
which the jury passed. Defendant contends that the adjust-
ment and settlement on which recovery is had was so clear-
ly shown to have been obtained by fraud that there is no
room for an honest difference of opinion, and therefore
the verdict and judgment are not sustained by sufficient
evidence. This is the only point urged in the brief, and
will be the only question considered.

There is now no contention that there was any fraud
in procuring the insurance, or that the property was over-
insured.  Neither is there any suggestion that there is any
suspicious circumstance connected with the fire.  During
the fire the linotype machine was drenched with water
and became covered with debris.  The roof was burned
off the building, and plaster and cinders literally covered
the machine.  The timbers on which the machine rested
were burned to such an extent that plaintiff and defend-
ant's adjuster thought it unsafe to go about the machine
very much for fear the timbers might give way, and they,
together with the machine, be precipitated into the base-
ment.  The adjuster did not regard himself as competent
to pass on the damage, and between them it was arranged
to have an experienced linotype man from Omaha look
the property over.  At the suggestion of plaintiff, a man
named Bush, who had helped to install the machine, was
procured, and he, together with plaintiff, looked the ma-
chine over; but, for the same reasons that deterred the
adjuster and plaintiff from making a careful examina-
tion, he refrained from removing the debris from the ma-
chine, but took a long distance view of it, and then made
a report in writing stating: "Upon inspection I found the
following parts necessary to equip the machine so as to
put it in running order."  He then gave a list of parts by
taking a catalogue of parts, listing them, with the prices
given in the catalogue.  This report showed the total
amount required to be approximately $1,900.  Bush read
from this catalogue while Peterson did the writing, and
together this statement was prepared.  The claim is now
made that this report of loss was worked out by Peterson
and Bush for the purpose of defrauding defendant; that
it is untrue; that defendant was deceived thereby; and
therefore a recovery cannot be had thereon.

Plaintiff testified that, after this report had been made
to the adjuster, he had a conversation with the adjuster,
that they went over the matter together, and the adjuster
said that the statement made by Bush was not a state-

ment of the loss, and did not purport to be the loss at all, but that it was a statement of what it would cost to "rebuild the machine," while defendant was liable only for the actual loss, and he made an offer to pay the amount on which settlement was finally made. There is a letter in the record from the adjuster which fully corroborates the testimony of the plaintiff. It says: "We are unable to understand from what Mr. Bush figured in making his estimate, as to our minds it is entirely out of proportion with the actual damage sustained by fire, and we must say to you frankly that we cannot consider this estimate as a basis for settlement." The correspondence discloses that after Bush made his report defendant had arranged for an expert from the factory making the linotype machine to inspect the loss. And this inspection would have been made had not plaintiff accepted defendant's offer of settlement. It is quite evident that neither plaintiff nor defendant's adjuster removed the debris from the machine or made as careful an examination as they ought to have made before undertaking to adjust the loss. No doubt, each honestly believed that the machine was greatly damaged. It subsequently developed that the debris which fell on the machine had protected it from the fire and that it had suffered very little damage.

Defendant, in its brief, lays much stress upon the language of the report made by Bush and the fact that it was prepared in the office of plaintiff and to some extent, at least, under his direction. But the subsequent conduct of defendant's adjuster and his correspondence fairly show that he did not rely upon this statement, and we think it may be reasonably inferred that, having seen the property, he relied on his own judgment and thought at the time he was making an advantageous settlement. Here we have two parties dealing at arm's length, each seeking to make the best settlement attainable. They do make a settlement. Afterwards it is discovered that one has gained an advantage thereby, but for this reason alone we cannot set their agreement aside. If, when the debris was

removed and the machine examined, it were found that the damage exceeded the amount of the settlement, it is not unlikely defendant would have taken advantage of the agreement made and would have enforced it. The verdict of the jury has ample support in the evidence, and the judgment is

                                                        AFFIRMED.

SEDGWICK, J., not sitting.